```
         UNITED STATES BANKRUPTCY COURT
        EASTERN DISTRICT OF NORTH CAROLINA
                 RALEIGH DIVISION
```

IN RE:                                          CASE NO.

**MARY SCARBOROUGH MCKNIGHT**                   **04-03627-5-ATS**

    **DEBTOR**


### ORDER AWARDING SANCTIONS

The matter before the court is the motion filed by the chapter 13 debtor for sanctions against Ocwen Loan Servicing, LLC for violations of the automatic stay. A hearing took place in Raleigh, North Carolina on January 19, 2006.

Mary Scarborough McKnight filed a petition for relief under chapter 13 of the Bankruptcy Code on October 6, 2004. At that time, her mortgage was held by GMAC Mortgage Corp. GMAC had initiated foreclosure proceedings in July 2004, but the foreclosure sale was continued until September 27, 2004. The sale went forward, and Ms. McKnight filed her petition during the 10-day upset bid period. In April 2005, GMAC transferred its claim to Ocwen Loan Servicing.

In May 2005, Ms. McKnight underwent brain surgery. When she returned home after her surgery, Ms. McKnight was contacted by Ocwen about a missing mortgage check. An Ocwen representative informed Ms. McKnight that her check had been received but was lost, and she was asked to send a replacement check. Ms. McKnight testified that she asked the representative for her account number, and the representative

was to call her back.  When she did not receive a return call, Ms. McKnight, who was suffering the effects of her brain surgery, made several calls to Ocwen to determine her account number, but without success.  Instead, every representative with whom Ms. McKnight spoke informed her that her house had been foreclosed in July 2004, and she no longer owned the house.  Ms. McKnight repeatedly informed the representatives of her bankruptcy filing, but according to the motion, not only did the representatives maintain their position on the status of the house, one of them told Ms. McKnight that her bankruptcy had been dismissed.

    Meanwhile, Ms. McKnight also received several notices from Ocwen that her insurance had lapsed.  Ms. McKnight provided Ocwen with proof of coverage from October 2004 through October 2005, yet Ocwen continued to send her notices that it had obtained its own insurance on the property as well as letters telling her how to avoid foreclosure.  One day, Ms. McKnight was approached by a real estate agent who informed Ms. McKnight that Ocwen owned her house and that she was a holdover tenant.  The realtor further told Ms. McKnight that she needed to find alternative housing, as the sheriff was likely to evict her.

    In early November, Ms. McKnight received two bills from Ocwen, one in the amount of $5,000 and the other in the amount of $6,000.  These bills referenced "post-petition amounts due" and noted as "information only" several other fees and expenses.  On November 7, 2005, Ocwen

filed a motion for relief from the automatic stay due to a delinquency in payments from April 1, 2005. In December, Ms. McKnight obtained her credit report in hopes of refinancing with a new lender, and discovered that Ocwen had listed her loan as in bankruptcy and in foreclosure. Frustrated with the situation, Ms. McKnight filed the instant motion for sanctions on December 6, 2005, seeking over $10,000 in damages.

Ms. McKnight explained that her illness and brain surgery left her mentally and physically impaired. Her memory was very poor after her surgery, and she was unable to drive for a significant period. Her son, who is 15 years old, does not drive and has limited ability to assist Ms. McKnight. She believes she has been harassed by Ocwen, and the threats of eviction and statements that she no longer owns her house have caused her severe distress. Ms. McKnight faces additional brain surgery on January 20, 2006, and she hopes for some assurance that she will have a home when she is released from the hospital.

Though it did not present any evidence, Ocwen contends that it proceeded under the mistaken belief that the property had been foreclosed in July 2004, when the foreclosure proceeding was first scheduled. Had that been the case, the bankruptcy would not have affected the foreclosure and no stay would have gone into effect. Ocwen acknowledges its error and admits that it may be liable for some actual damages, but does not believe that punitive damages are appropriate because its acts were not malicious. Ocwen further

3

contends that if the debtor had filed her motion for sanctions earlier, this matter could have been resolved before it escalated to the point where Ms. McKnight seeks substantial damages.  Ocwen has taken steps to rectify the insurance issue and to pay the taxes owed on the property, but it notes that Ms. McKnight still owes it for the April 2005 payment forward (it has agreed to waive all other fees reflected in the statements Ms. McKnight received in November).  Ocwen also stands by its report to the credit reporting agency, as there was a foreclosure pending when the bankruptcy was filed, and while it is currently stayed, it has not been dismissed.

Ocwen's actions clearly violated the automatic stay.  "The automatic stay serves a crucial function in any bankruptcy case and willful violations under § 362(h) are serious matters warranting the mandatory imposition of sanctions that Congress has proscribed."  In re Brock Utilities & Grading, Inc., 185 B.R. 719, 720 (Bankr. E.D.N.C. 1995).

Ocwen contends that its violations were not willful, because it believed the foreclosure was concluded in July 2004 and that the automatic stay did not apply to Ocwen.  This position is inconsistent with several facts, however: first, Ocwen sent Ms. McKnight repeated notices about her lapse of insurance, which would not have been material had Ocwen owned the property.  Second, the chapter 13 trustee's records show that Ocwen filed a change of address notice with

the trustee's office in June 2005, and that payments were made by the trustee to Ocwen with respect to the prepetition arrearage in April, May, June, October, November and December 2005. The April payment was returned to the trustee, and the May, November and December payments had not cleared the trustee's bank as of December 31, 2005, but the June and October payments were negotiated by Ocwen. Certainly if Ocwen understood that the property had been foreclosed in July 2004, it would not have notified the trustee of its correct address nor accepted payments on the prepetition arrearage from the trustee. Finally, Ocwen filed a motion for relief from the automatic stay in November 2005, demonstrating that it was aware that the home had not been foreclosed in July 2004 before Ms. McKnight filed the instant motion for sanctions.

Undoubtedly, Ocwen's actions have caused Ms. McKnight considerable distress and she needs to have some assurances that she will have a home when she is released from the hospital. At the same time, she has not made payments to Ocwen for approximately 9 months and must pay Ocwen for missed payments.[1] Accordingly, the court will award sanctions in the form of a waiver of the next four payments due on Ms. McKnight's mortgage with Ocwen. Ocwen is to credit Ms. McKnight's account as though the payments for February, March, April and May 2006 have been

---

[1] If Ms. McKnight disagrees with the delinquency claimed by Ocwen, she must provide to Ocwen evidence of any payments she has made after March 2005.

5

made in the amount of $674.13 each.  During that 4-month period, the parties are to negotiate a reasonable cure of the April 2005 through January 2006 payments, with no late charges, insurance premiums or other fees.  The motion for relief from the automatic stay will not be considered by the court until May 2006, and it is presumed that the resolution of this issue will also resolve that motion.  In addition, Ocwen is to designate a specific customer service representative to handle Ms. McKnight's account so that she has one person to contact in the event of any further problems or discrepancies.  Finally, Ms. McKnight's attorney's fees are to be reimbursed in the amount of $750.

Based on the foregoing, the debtor's motion for sanctions is **ALLOWED**.  **Within 10 days from the date of this order, Ocwen is directed to pay $750 in attorney's fees to Sara Whitley Harrington, attorney for the debtor, Browne, Flebotte, Wilson, Horn & Webb PL, Post Office Box 2247, Durham, North Carolina 27702.  Ocwen is further directed to credit Ms. McKnight's account for payments in the amount of $674.13 each for the months of February, March, April and May 2006.  Ocwen is further directed to assign a customer service representative to Ms. McKnight's account.**  The parties are to negotiate a reasonable cure of the delinquent payments for April 2005 through January 2006, and report to the court by way of a consent order resolving the motion for relief from the   automatic

stay, failing which the motion for relief from the automatic stay will be scheduled for hearing in May 2006.

**SO ORDERED.**

**DATED:  January 19, 2006**

A. Thomas Small
United States Bankruptcy Judge